UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>EUGENE CHEN; HELEN CHEN;<br>EVANGELINE CHEN; ERIC CHEN;<br>FIVE FORTUNE LLC; UBS FINANCIAL<br>SERVICES, INC.; WELLS FARGO<br>BANK, N.A.; AND GREENE, ROBERTS<br>& RASMUSSEN, PLLC,<br><br>            Defendants. | 2:10-CV-00128-PMP-PAL<br><br><br><br>ORDER |

Presently before the Court is Plaintiff's Motion for Summary Judgment (Doc. #55), filed on September 13, 2010. Defendant UBS Financial Services, Inc. filed a Response (Doc. #58) on October 7, 2010. Defendants Eugene Chen, Evangeline Chen, Helen Chen, and Greene, Roberts & Rasmussen, PLLC filed a Response (Doc. #59) on October 8, 2010. Plaintiff United States filed Replies (Doc. #60, #62) on October 12 and 13, 2010.

**I. BACKGROUND**

In June 2004, the United States of America brought a False Claims Act action against Dr. Eugene Chen ("Chen"). (United States v. Chen, 2:04-CV-00859-PMP-PAL ("Chen I"), Compl. (Doc. #1).) A jury trial resulted in a verdict on February 19, 2009, against Chen in the amount of $420,695.56. (Chen I, Mins. of Proceedings (Doc. #117), Verdict (Doc. #121).) Following the verdict, the Court set a hearing for April 14, 2009,

regarding treble damages. (<u>Chen I</u>, Mins. of Proceedings (Doc. #117).) Chen moved for post-trial relief and for a mistrial, which the Court denied. (<u>Chen I</u>, Order (Doc. #127).) The Court entered Judgment against Chen and in favor of the United States in the amount of $420,695.56 on March 25, 2009. (<u>Chen I</u>, Judgment (Doc. #128).) The United States thereafter moved to amend or correct the judgment, noting that the Court previously had set a hearing regarding treble damages and civil penalties. (<u>Chen I</u>, Gov't's Mot. to Alter or Amend J. (Doc. #129).) Chen also moved for reconsideration. (<u>Chen I</u>, Mot. for Recons. (Doc. #130).) The Court thereafter continued the hearing set for April 14 to May 22, 2009, and indicated it would hear argument on the two motions at that time. (<u>Chen I</u>, Min. Order (Doc. #139).) On May 12, the Court further continued the hearing to May 29, 2009. (<u>Chen I</u>, Order (Min. Order (Doc. #142).)

On May 26, 2009, Five Fortune, LLC ("Five Fortune") was formed with Gary Wu and Defendant Evangeline Chen, Chen's sister, as managers. (MSJ, Ex. B at 15; MSJ, Ex. A at 35.) Defendant Greene, Roberts & Rasmussen, PLLC ("Greene Roberts"), a law firm which has represented Chen on various matters since 2003, is Five Fortune's registered agent. (MSJ, Ex. B at 7, 15.) Two days after forming Five Fortune, Wu and Evangeline Chen entered into an agreement pursuant to which Five Fortune would purchase two parcels of land owned by Chen and his wife, Helen, for $400,000. (Defs.' Opp'n, Ex. 1; MSJ, Ex. A at 30-35.) In February 2009, Chen had estimated the two parcels to be worth $460,263 and $447,263, respectively.[1] (MSJ, Ex. A at 36-40.) However, an appraiser set the value of each parcel at $200,000. (MSJ, Ex. A at 41-42.)

///

---

[1] On May 29, 2009, Chen stipulated that his net worth was $2,150,000.00. (<u>Chen I</u>, Am. Findings of Fact & Conclusions of Law (Doc. #161) at 3.) The Government contends this amount was based on the parcels being valued at $460,263 and $447,263, respectively, but the Government provides no evidence to that effect. However, Chen does not dispute that the stipulation was based on these amounts.

2

1    The Court held the hearing on May 29, 2009. (Chen I, Mins. of Proceedings
(Doc. #152).) The Court granted the Government's motion, denied Chen's motion for
reconsideration, and conducted an evidentiary hearing. (Id.) On June 3, 2009, the Court
concluded an amended judgment should be entered in the case to reflect that the jury found
actual damages of $420,695.56, which the Court trebled to $1,262,086.60, and added a civil
penalty of $5,500.00, for a total judgment of $1,267,586.60. (Chen I, Findings of Fact &
Conclusions of Law (Doc. #155).) The Second Amended Judgment was entered June 4,
2009. (Chen I, Second Am. J. (Doc. #162).)

The purchase agreement between the Chens and Five Fortune closed on June 26,
2009. (Defs.' MSJ, Ex. 1.) From the total purchase price of $400,000, the settlement
statement provided for disbursements of $100,000 each to two accounts at Defendant UBS
Financial Services, Inc. ("UBS"), $150,000 to Wells Fargo Bank, N.A. ("Wells Fargo") to
pay down the mortgage on Chen's primary residence, $3069.68 to Wells Fargo for the
August house payment on Chen's primary residence, and $41,368.84 to Greene Roberts'
trust account. (Defs.' MSJ, Ex. 1; MSJ, Ex. A at 44-48.) The $200,000 sent to UBS was
used to establish two Section 529 educational accounts in the amount of $100,000 each for
Chen's two sons. (MSJ, Ex. A at 44-47.) Evangeline Chen is the account owner of the two
educational funds. (MSJ, Ex. A at 46; Stip. of Fact Between Pl. & Certain Defs. (Doc. #51)
at 2.)

At his deposition, Chen testified that as a result of the jury trial, his professional
life "has been devastated," and he has had to make new plans for the future. (MSJ, Ex. A at
49.) Chen stated that to pay for his obligations, including the mortgage, his children's
education, and paying legal fees, he and his wife sold the two parcels. (Id.) When asked
whether the reason the UBS accounts were structured so that the Chens had no ownership
or control was to ensure the Chens' creditors could not access the funds, Chen responded:
///

3

> Those are the legal, the issues I have to consult, consult with my legal advisors. If that's what they recommend me to do, that's what I, I accept their advice. So I, myself, did not make any recommendation, this is the prudent way of doing that so their educational expenses will be safeguarded for the future against who? Can be anybody.

(MSJ, Ex. A at 52-53.) When asked why he paid down his mortgage, Chen responded that because his professional career had been impacted, he paid down the mortgage to increase the chances that he would be able to pay off the mortgage. (MSJ, Ex. A at 53.) Chen denied that he did so to increase the amount of funds subject to the homestead exemption, although he acknowledged he was aware of the homestead exemption and knew the amounts used to pay down the mortgage would be protected. (MSJ, Ex. A at 54.) As to the money set aside in the attorney trust account, Chen testified that it was for both past and future legal bills. (MSJ, Ex. A at 54-55.)

The funds in the Greene Roberts trust account were paid to Greene Roberts and Chen's other attorneys, Hutchison and Steffen. In October 2009, Greene Roberts distributed $10,047.78 to Hutchison and Steffen, and $2,100 to itself. (MSJ, Ex. B at 31-32.) On November 16, 2009, Greene Roberts distributed $18,995.12 to Hutchison and Steffen, $3,069.68 to Wells Fargo as the December 2009 payment on the mortgage for the Chens' primary residence, and $825 to itself. (MSJ, Ex. B at 33, 35; Defs.' MSJ, Ex. 2.) On December 21, 2009, Greene Roberts distributed $22,518.86 to Hutchison and Steffen. (MSJ, Ex. B at 36.)

The Government sent Chen post-judgment interrogatories on October 15, 2009. (Defs.' MSJ, Ex. 3.) The Government deposed Chen on December 3, 2009. (MSJ, Ex. A.)

The United States thereafter brought this action, asserting claims against Chen, Helen Chen, Evangeline Chen, Eric Chen, Five Fortune, UBS, Wells Fargo, and Greene Roberts, asserting that the sale of the two parcels and the distributions thereafter were fraudulent transfers under 28 U.S.C. § 3304. (Compl. (Doc. #1).) The United States thereafter stipulated to the dismissal of Defendants Wells Fargo Bank, N.A., and Eric Chen.

(Stip. (Doc. #50); Stip. (Doc. #54).)  The Court dismissed Five Fortune on April 20, 2010. (Order (Doc. #19).)

The United States now moves for summary judgment, arguing no genuine issue of material fact remains that the transfers to the UBS accounts, the mortgage paydown, and the transfers from the Greene Roberts trust account were fraudulent transfers.  The United States argues the transfers to the UBS account were constructively fraudulent because Chen did not receive reasonably equivalent value in exchange for the transfers and Chen was insolvent at the time or was rendered insolvent by the transfers.  The United States further argues all the transfers were fraudulent because Chen intended to hinder, delay, or defraud the United States.

Defendant UBS responds that it does not oppose the motion, except that it objects to any judgment against UBS, which has no interest in the accounts.  The United States, in reply, has clarified that it does not seek a judgment against UBS's general assets, but merely seeks a means to compel UBS to relinquish any interest it may have in the 529 accounts.

Defendants Chen, Helen Chen, Evangeline Chen, and Greene Roberts ("Chen Defendants") respond that issues of fact remain as to when the debt to the United States was incurred, whether Chen received reasonably equivalent value for the transfers, whether Chen was insolvent or rendered insolvent by the transfers, and whether Chen intended to hinder, delay, or defraud the United States.  The Chen Defendants further argue that Evangeline Chen and Greene Roberts are entitled to the good faith transferee defense.  The Chen Defendants also contend that exemption planning does not amount to a fraudulent transfer as a matter of law.  Finally, the Chen Defendants argue that no judgment should be entered against Greene Roberts or Evangeline Chen because they are only nominal defendants.  Rather, Defendants argue the Court should enter only a declaratory judgment indicating the transfers were fraudulent.

///

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

## III. DISCUSSION

Pursuant to 28 U.S.C. § 3304, the United States may avoid fraudulent transfers under certain circumstances. Under section 3304(a)–

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if--
> (1)(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
> (B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation . . . .

Additionally, section 3304(b) provides that–

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation--
> (A) with actual intent to hinder, delay, or defraud a creditor . . . .

Factors courts consider to determine actual intent include, but are not limited to, whether–

> (A) the transfer or obligation was to an insider; (B) the debtor retained possession or control of the property transferred after the transfer; (C) the transfer or obligation was disclosed or concealed; (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (E) the transfer was of substantially all the debtor's assets; (F) the debtor absconded; (G) the debtor removed or concealed assets; (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2).

Upon showing a transfer was fraudulent, the United States may avoid the transfer to the extent necessary to satisfy the debt to the United States, and may obtain a remedy "against the asset transferred or other property of the transferee," or "any other relief the circumstances may require." Id. § 3306(a). The United States "may recover judgment for the value of the asset transferred, but not to exceed the judgment on a debt." Id. § 3307(b). This judgment may be entered against "(1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee, other than a good faith transferee who took for value or any subsequent transferee of such good-faith transferee." Id.

**A. UBS Accounts**

To establish its claim under section 3304(a), the United States must show no genuine issue of material fact remains that (1) Chen's debt to the United States arose before Chen transferred the funds to the UBS accounts, (2) Chen made the transfer without receiving a reasonably equivalent value in exchange, and (3) Chen was insolvent at that time or became insolvent as a result of the transfer. With respect to an asset that is not real property, a transfer is made when it is "so far perfected that a creditor on a simple contract

1  cannot acquire, otherwise than under this subchapter, a judicial lien that is superior to the
2  interest of the transferee." Id. § 3305(1)(B).
3      "Reasonably equivalent value means that 'the debtor has received value that is
4  substantially comparable to the worth of the transferred property.'" U.S. v. Loftis, 607 F.3d
5  173, 177 (5th Cir. 2010) (citing BFP v. Resolution Trust Corp., 511 U.S. 531, 548 (1994)).
6  This determination is made "from the creditor's point of view," and focuses on "the net
7  effect of the transfers on the debtor's estate, the funds available to the unsecured creditors."
8  Id. at 177.  Emotional or mental benefits to the debtor do not constitute reasonably
9  equivalent value. See Tavenner v. Smoot, 257 F.3d 401, 408 (4th Cir. 2001) (holding "love
10 and affection does not constitute reasonably equivalent value" under similar provision in the
11 Bankruptcy Code); In re Treadwell, 699 F.2d 1050, 1051 (11th Cir. 1983) (same); U.S. v.
12 Sherrill, 626 F. Supp. 2d 1267, 1273-74 (M.D. Ga. 2009) (same under section 3304).
13     A debtor is insolvent "if the sum of the debtor's debts is greater than all of the
14 debtor's assets at a fair valuation." 28 U.S.C. § 3302(a).  Additionally, a debtor is
15 presumed to be insolvent if generally he is not paying debts as they become due. Id.
16 § 3302(b).
17     No genuine issue of material fact remains that Chen's debt to the United States
18 arose no later than June 4, 2009, when the Second Amended Judgment was entered.
19 Although the United States moved for reconsideration on the amount of the judgment, as of
20 June 4, 2009, Chen owed a substantial debt to the United States. The only question was
21 whether the Court would increase the amount Chen owed based on the United States'
22 motion. Additionally, no genuine issue of material fact remains that Chen transferred the
23 funds to UBS no earlier than June 26, 2009, when the purchase agreement regarding the
24 two parcels closed. Until that date, Chen did not have possession of the proceeds from the
25 sale to transfer to the UBS accounts as no transfer of the funds from Five Fortune to Chen
26 had occurred. Consequently, Chen's debt to the United States arose before Chen

8

transferred the funds to the UBS accounts.

Second, no genuine issue of material fact remains that Chen made the transfer of the funds to UBS without receiving reasonably equivalent value in exchange. Any mental or emotional benefit Chen received from providing funds for his children's future education does not constitute reasonably equivalent value as a matter of law. Such a benefit is worthless to the creditors and adds nothing to debtor's estate that would be available to unsecured creditors.

Finally, no genuine issue of material fact remains that Chen was insolvent at the time, and/or was rendered insolvent by the transfers. The United States has provided a chart demonstrating that Chen's liabilities exceeded his net worth both at the time of the disbursements and by a substantially greater amount thereafter. (MSJ at 6.) Chen disputes the chart, contending it does not reflect all of Chen's assets because it does not show his investment in Vescor Capital Inc., and does not account for Chen's future income or for the garnishment of procedures Chen performed at Veterans Administration facilities. However, the evidence Chen provides regarding Vescor is dated from 2005 and 2006, and thus provides no basis to determine the value of that asset in June 2009. Moreover, Chen testified at his deposition that the Vescor investment was worthless, and he treated it as such on his tax returns, taking a total loss. (MSJ, Ex. A at 11-12, 70-71.) As to Chen's income, Chen provided no evidence regarding his income during the relevant period. The Court notes that just a month earlier at the May 29, 2009 hearing, Chen testified that his ability to perform his job had been severely impacted by the verdict in the False Claims Act case because it had affected his ability to maintain privileges at hospitals. (Chen I, Tr. (Doc. #164) at 37-38, 42-43.) Chen also provides no evidence regarding the garnishment of any procedures performed at Veterans Administration facilities.

No genuine issue of material fact remains that Chen became indebted to the United States before he transferred the funds to the UBS accounts, that he did not receive

reasonably equivalent value in exchange, and that he was insolvent at the time or was rendered insolvent by the transfers. The United States therefore is entitled to avoid the transfers.[2] Pursuant to § 3307(b), judgment may be entered against the first transferee. Evangeline Chen, as owner of the UBS accounts, is the transferee. The good faith transfer defense does not apply to a transfer avoidable under section 3304(a), and thus Evangeline Chen cannot invoke that defense here. 28 U.S.C. § 3307(a).

The Chen Defendants argue Evangeline Chen cannot withdraw the funds from the 529 accounts without violating fiduciary duties, or statutory or regulatory requirements. Defendants cite no authority or factual evidence for this proposition. It is undisputed that Evangeline Chen is the account owner. While the use of the funds for purposes other than educational expenses may have tax consequences, Defendants have not presented any evidence nor cited any law that Evangeline Chen is somehow precluded from withdrawing the funds. The Court therefore will enter judgment against Evangeline Chen and will require UBS, as a nominal defendant, to take whatever actions it must take to facilitate any withdrawals from the 529 accounts.

Finally, as to the value of the judgment against Evangeline Chen, the Court will enter judgment against Evangeline Chen in the amount of the balance of the 529 accounts plus accrued interest. Pursuant to section 3307(c), the value of the asset "is the value of the asset at the time of the transfer, subject to adjustment as the equities may require." Because the transfer never should have been made, and because of the discrepancy between the declared value in February 2009 with the appraisal and sale price in May 2009, the Court concludes the equities weigh in favor of awarding the interest earned on the fraudulently transferred funds. The United States has presented evidence that the accounts had a balance of $115,428.11 in each account, for a total of $230,856.22. (MSJ, Ex. C at 48-49.) The

---

[2] Because the United States is entitled to summary judgment under § 3304(a), the Court need not evaluate whether the transfers to the UBS accounts were fraudulent under § 3304(b).

Court therefore will enter Judgment against Evangeline Chen in the amount of $230,856.22.

**B. Mortgage Paydown**

To establish the mortgage paydown was fraudulent under section 3304(b),[3] the United States must show no genuine issue of material fact remains that Chen made the payments on his mortgage to Wells Fargo with actual intent to hinder, delay, or defraud the United States. The date of the debt vis-a-vis the date of the transfer is irrelevant, as are the questions of reasonably equivalent value and solvency.

Viewing the facts in the light most favorable to the Chen Defendants, genuine issues of material fact remain regarding Chen's intent. Prior to transferring the funds, the United States had sued Chen and obtained a jury verdict and judgment thereon, and the verdict and judgment occurred within the same time frame as the transfer. The transfer was to Wells Fargo, but in a sense was to Chen himself, and thus was to an insider. The mortgage paydown resulted in a substantial increase in Chen's equity in his primary residence which is protected by the homestead exemption, and thus further inures to Chen's benefit. Chen did not retain possession or control of the transferred funds after the transfer, although he continued to live in his primary residence and thus to some extent enjoyed the benefits of the transfer after the fact. The transfer to Wells Fargo standing alone was not substantially all of Chen's assets, but when considered in context of the simultaneous transfers to the UBS accounts and the Greene Roberts trust account, it constituted a significant portion of Chen's assets.

Chen did not disclose the transaction until the United States requested information in its post-judgment interrogatories. However, Chen did not take any steps to conceal the transaction. Chen fraudulently transferred other funds to the UBS accounts and was insolvent or became insolvent shortly after the sale of the parcels and the related

---

[3] The United States does not argue the transfer was fraudulent under section 3304(a), as Chen received reasonably equivalent value in the form of credit for the payments on his mortgage.

11

transfers, as discussed above. But Chen received reasonably equivalent value for the transferred funds as a credit on his mortgage obligation. Chen's testimony on this issue indicates that he was aware that the mortgage paydown would benefit him through the homestead exemption, but that his intent in making the payment was to assist in meeting this obligation given the impact the jury's verdict had on his ability to work.

Although many of the factors would support a finding that Chen acted with the requisite intent, Chen's credibility and intent are questions for the fact finder. Because a reasonable jury could conclude that Chen did not intend to hinder, delay, or defraud the United States when he paid down his mortgage, the Court will deny the United States' motion for summary judgment as to the mortgage paydown.

### C. Greene Roberts Trust Account

Viewing the facts in the light most favorable to the Chen Defendants, genuine issues of material fact remain regarding Chen's intent. Prior to transferring the funds, the United States had sued Chen and obtained a jury verdict and judgment thereon, and the verdict and judgment occurred within the same time frame as the transfers out of the Greene Roberts trust account. The transfers were to Chen's attorneys, who are not insiders. Chen retained possession or control of the transferred funds after the transfer to the trust account in that he was able to direct Greene Roberts to whom to make payments. However, Chen did not retain possession or control over the funds after they were transferred to the attorneys as payment for services rendered. The transfers to Chen's attorneys standing alone were not substantially all of Chen's assets, but when considered in context of the simultaneous transfers to the UBS accounts and the mortgage paydown, they constituted a significant portion of Chen's assets.

Chen did not disclose these transfers until the United States requested information in its post-judgment interrogatories. However, Chen did not take any steps to conceal the transfers. Chen fraudulently transferred other funds to the UBS accounts and

was insolvent or became insolvent shortly after the sale of the parcels and the related transfers, as discussed above. But Chen received reasonably equivalent value for the transferred funds in the form of legal services.[4] Chen testified that he made these transfers to fulfill the obligation to pay his attorneys who were assisting him.

Although many of the factors would support a finding that Chen acted with the requisite intent, Chen's credibility and intent are questions for the fact finder. Because a reasonable jury could conclude that Chen did not intend to hinder, delay, or defraud the United States when he paid his attorneys for legal services performed, the Court will deny the United States' motion for summary judgment as to the transfers from the Greene Roberts trust account.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. #55) is hereby GRANTED in part and DENIED in part. The motion is granted against Evangeline Chen and UBS Financial Services, Inc. as to the funds in the 529 accounts. The motion is denied in all other respects.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of the United States and against Evangeline Chen in the amount of $230,856.22.

IT IS FURTHER ORDERED that nominal Defendant UBS Financial Services, Inc. shall take any steps within its power to facilitate Evangeline Chen's transfer of funds out of the 529 accounts.

DATED: December 20, 2010

_____
PHILIP M. PRO
United States District Judge

---

[4] Chen also made a house payment out of the Greene Roberts trust account, which would fall under the same analysis as discussed previously with respect to the mortgage paydown.